UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTOPHER LYONS, | ) |
| Petitioner, | ) ) ) |
| v. | ) Civil No. 8-195-B-W ) |
| WARDEN, MAINE STATE PRISON, | ) ) |
| Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Christopher Lyons has filed a 28 U.S.C. § 2254 petition seeking relief from his sentence after he was convicted of manslaughter, operating under the influence, aggravated assault, reckless conduct with a dangerous weapon, and operating after revocation. Lyons was sentenced to twenty-five years on his manslaughter conviction and his sentences on the remaining counts are to be served concurrently. Prior to Lyons's guilty plea, the prosecutor described the State's evidence which was, in a nutshell, that Lyons, who had been supervising a roofing crew, had consumed alcohol late into the afternoon of New Year's Eve 2001, and, with three members of his roofing crew in his truck, began driving at high speeds, recklessly tailgating and attempting to pass on both sides of other vehicles, until he lost control of his truck and hit a car head-on, killing the driver.[1]

In this § 2254 petition Lyons presses two straight-up challenges to his sentencing procedure and two ineffective assistance of counsel claims, both of which relate to his attorney's performance at sentencing. The State of Maine has filed a motion to dismiss. For the following reasons, I recommend that the Court deny Lyons 28 U.S.C. § 2254 relief.

---

[1]   (Rule 11 Plea Tr. at 12-27, State App. A.)

*Discussion*

**Standard for 28 U.S.C. § 2254 Review of State Court Determinations**

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA):

if a state court has adjudicated a habeas petitioner's claim on the merits, a federal court may issue the writ only if the state court's adjudication resulted in a decision that "was contrary to" clearly established federal law, involved an "unreasonable application" of clearly established federal law, or was based on an "unreasonable determination of the facts in light of the evidence presented." 28 U.S.C § 2254(d). A state court's decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite from that reached by the U.S. Supreme Court on a question of law, or if the state court decides the case differently than the U.S. Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court's decision unreasonably applies clearly established federal law if the state court correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply. L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir.2002) (citing Williams, 529 U.S. at 407). If the state court does not expressly apply the federal standard but resolves the issue under a state law standard that is more favorable to defendants than the federal standard, then the reviewing court "will presume the federal law adjudication to be subsumed within the state law adjudication." Teti v. Bender, 507 F.3d 50, 54-55 (1st Cir.2007) (quoting McCambridge v. Hall, 303 F.3d 24, 35 (1st Cir.2002)). To be unreasonable, the state court's application of existing legal principles must be more than merely erroneous or incorrect. Williams, 529 U.S. at 411. "We agree with the Second Circuit that 'some increment of incorrectness beyond error is required.' Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000). The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." McCambridge, 303 F.3d at 36.

In reviewing a habeas corpus petition under AEDPA, a federal court will presume that the state court's findings of fact are correct. For this purpose, the term "facts" refers to "basic, primary, or historical facts," such as witness credibility and recitals of external events. Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir.2001) (quoting Bryson v. Ward, 187 F.3d 1193, 1211 (10th Cir.1999)). The habeas petitioner may defeat the presumption of correctness only with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); see also Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir.2002). The presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court,

2

>  makes the findings of fact. Norton v. Spencer, 351 F.3d 1, 6 (1st Cir.2003)
>  (quoting Sumner v. Mata, 455 U.S. 591, 593 (1982)).

Sleeper v. Spencer, 510 F.3d 32, 37-38(1st Cir. 2007). See also Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006); Smiley v. Maloney, 422 F.3d 17 (1st Cir. 2005); Mello v. DiPaulo, 295 F.3d 137, 142-43 (1st Cir. 2002); Vieux v. Pepe, 184 F.3d 59, 63-64 (1st Cir. 1999).

### *Merits of Lyons's 28 U.S.C. § 2254 Claims*

Lyons's four 28 U.S.C. § 2254 claims are as follows. In Ground One he maintains that his constitutional rights were violated when the sentencing judge allowed newly discovered evidence in the form of the sworn testimony of two witnesses to be heard and considered as aggravating factors without notice to Lyons. In Ground Two Lyons argues that his constitutional rights were violated when the sentence imposed exceeded the statutory maximum as a result of the sentencing judge's reliance on a mix of non-admitted factual findings made during sentencing and Lyons's criminal history. With regards to counsel's performance, in Lyons's third ground he maintains that his attorney failed to object to the misapplication of sentencing principles explicated by the Maine Supreme Court. And, finally, Lyons complains that his attorney failed to adequately explain that the sentencing court misapplied the sentencing principles when it exceeded the twenty-year "mandate set by the Supreme Court in vehicle manslaughter cases." Lyons wants this court to vacate his sentence and remand with instructions that he be sentenced based only upon the facts that he admitted.[2] The State argues that only one of Lyons's claims, his second ground, has been fully exhausted as required by 28 U.S.C. § 2254(b)(1)(A).

With respect to exhaustion, in his application to appeal his sentence, Lyons identified four grounds:  1. The sentencing judge allowed testimony on newly discovered State's evidence

---

[2]  The thrusts of Lyons's claims are straightforward although rather skeletal. Lyons has not filed a reply memorandum.

3

to be heard and considered during sentencing, despite Lyons's inability (due to lack of notice from the State) to adequately investigate and defend against such evidence; 2. the sentence imposed exceeded statutory maximum, and the crime lacked the necessary "heinous and violent" nature so as to permit such an exception; 3. the judge misapplied sentencing principles; and 4. the sentence far exceeded sentences for similar crimes. (Doc. No. 9 at 4.)  Leave to appeal from the sentence was denied. (Id. at 5.)

In his form-petition for post conviction review, Lyons pressed two ineffective assistance of counsel claims.  First: "Petitioner's trial counsel failed to object at sentencing upon the grounds of misapplication of the sentencing principles mandated by the Maine Supreme Court s[i]tting as the Law Court."  (Petition Post-Conviction Review at 3, State App. B.) Second: "Counsel failed to adequately explain that the sentencing court misapplied the sentencing principles in going over the 20 year mandate set by the Supreme Court in vehicle manslaughter cases."  (Id. at 3-4.)   In a counseled amendment to this petition Lyons added a third ineffective assistance of counsel ground.  (Pet'r Am. Petition Post-conviction Review at 1, State App. B.)  He argued that defense counsel advised him before his guilty pleas that he could not receive a sentence of more than 20 years if he pled guilty to all the charges, yet Lyons received a sentence of more than 20 years, and his attorney failed to negotiate a cap agreement. (Id.)  In yet another amendment Lyons asserted a fourth ground.  This was a challenge to the sentencing judge finding facts by a preponderance of the evidence when concluding that his conduct was sufficiently heinous, a finding in violation of  Blakely v. Washington, 542 U.S. 296 (2004).  (Pet'r 2d Am. Petition Post-conviction Review at 1, State App. B.)

The post-conviction court reasoned as applicable:

> The applicable law in force at the time of Mr. Lyons's sentencing in August 2002 stated:
>> In the case of a Class A crime, the court shall set a definite period not to exceed 40 years.  The court may consider a serious criminal history of the defendant and impose a maximum period of incarceration in excess of 20 years based on either the nature and seriousness of the crime alone or on the nature and seriousness of the crime coupled with the serious criminal history of the defendant.

17-A M.R.S.A. § 1252(a)(A)(1998).  This form of sentencing statute has been termed a "two-tiered" sentencing structure.  <u>See</u> <u>Alexandre v. State</u>, 2007 ME 106, ¶ 18, [972] A.2d [1155, 1160].  Under the two-tiered approach, a " ' sentence in excess of twenty years may not be imposed' without a judicial finding of heinousness."  <u>Id.</u> (quoting <u>State v. Schofield</u>, 2005 ME 82, ¶ 14, 895 A.2d 927)  However, the trial court may impose a sentence in excess of twenty years based on the fact of prior convictions.   <u>State v. Cobb</u>, 2006 ME 43, ¶ 22, 895 A.2d 972, 978 (citing <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490…(2000); <u>U.S. v. Booker</u>, 543 U.S. 2200, 244 … (2005)).

> Both parties agree that the applicable law is the two-tiered analysis.  Consequently, Mr. Lyons concedes, based on <u>Cobb</u>, that an elevated sentence is permissible if the Court based its decision solely on defendant's criminal record.  <u>See</u> <u>id.</u>  Mr. Lyons asserts, however, that the Court may have considered the testimony of Mr. Simms, which testimony, Mr. Lyons contends, is irrelevant and illegal in elevating the sentence.
> ….
>
> It is well settled that the trial court may consider the prior criminal history of a defendant in elevating a sentence.  <u>See</u> <u>Cobb</u>, 2006 ME 43, ¶ 23, 895 A.2d at 979.  The <u>Cobb</u> Court considered the defendant's criminal history, his violent past and the psychological impact on the victim and his family in its elevation of Cobb's sentence.  <u>Id.</u> ¶ 12, 895 A.2d at 976.  Those considerations were found permissible under the Sixth Amendment because, prior to considering Cobb's criminal history, the trial court first determined that the maximum basic sentence was appropriate.  <u>Id.</u> ¶ 24, 895 A.2d at 979.  The Court concluded that the criminal history consideration, alone, would have elevated the sentence beyond the 20 years.  <u>Id.</u>
> The facts before this Court are far less ambiguous.  In this case the criminal history was the trial court's sole justification for imposing a sentence beyond the twenty years.  At sentencing, the trial court reasoned:
>> But the list of crimes and the nature of the crimes, when you combine that with his motor vehicle record is a significant criminal record of both a motor vehicle nature and otherwise, and it shows antisocial behavior and really problems conforming with society and society's rules, and I believe that that is very much an aggravating circumstance that would justify taking this to the upper tier in regards to the manslaughter, in other words it takes it over 20 years.

> Transcript at 142. The Law Court has stated that if the court … relied only on criminal conviction data in determining that sentence in the upper tier was warranted, our analysis would end at [that] point." Cobb, 2006 ME 43, ¶ 23, 895 A.2d 979. Consequently the trial court did not err in imposing a sentence greater than twenty years. Accordingly, Mr. Lyons has failed to state a claim upon which relief can be granted.

(Nov. 1, 2007, Order at 3-6, State App. B.)[3]

In his memorandum seeking review of this determination by the Maine Law Court, Lyons set forth two assertions. First he argued that the post-conviction court erred in holding that Lyons's prior record was the sole basis for the trial court's decision to elevate his sentence above twenty years. (Mem. Support Issuance of Certificate of Probable Cause at 3-4, State App. C.) And, second, he maintained that the sentencing court's use of a mixed basis of fact and criminal history violated his Sixth Amendment rights under Maine Law and Blakely. (Id. at 4-5.) Stating that it had reviewed the judgment and the pleadings submitted to it, the Maine Law Court summarily denied discretionary review. (Order Denying Certificate Probable Cause at 1, State App. C.)

The State is right that Lyons failed to fully exhaust the two ineffective assistance of counsel claims.[4] See Jackson v. Coalter, 337 F.3d 74, 85 -87 (1st Cir. 2003) (requiring full and proper exhaustion of § 2254 claims).

---

[3]   With regards to Lyons's Blakely predicated claim, the sentencing hearing was conducted on June 28, 2002, almost smack-dab midway between the June 26, 2000, issuance of Apprendi and the June 24, 2004, Blakely decision. See United States v. Morgan, 384 F.3d 1, 8 (1st Cir. 2004). The post-conviction court analyzed the claim through a post- Blakely prism.
   There is no question that Blakely is the clearly established United States Supreme Court law for purposes of 28 U.S.C. § 2254(d)(1) analysis. In his 28 U.S.C. § 2254 petition Lyons actually does not expressly name Blakely but it is clear, when placing his § 2254 claim in the context of his challenge to the post-conviction court's reasoning, that it is this United States Supreme Court law on which his federal constitutional claims rise and fall.

[4]   There is no issue, therefore, as to whether counsel should have pressed an Apprendi argument at this juncture, which could have been to Lyons's advantage as he could have taken advantage of the holding of that case while his case was still at the sentencing/direct appeal stage.

Lyons's claim that the sentencing judge should not have allowed newly discovered evidence in the form of the sworn testimony of two witnesses to be heard and considered as aggravating factors without notice to Lyons was raised in his application to appeal his sentence to the Maine Law Court and that application was denied.[5]

In his 28 U.S.C. § 2254 petition Lyons asserts:

> At the beginning of the sentencing hearing on August 15, 2002, Justice Cole recognized that the information being offered by the witnesses (Adam Sims and Christopher Caron) was new to both the defense and court. The court then ordered that the information be taken by way of sworn testimony.  The testimony of Sims was considered an aggravating factor by the trial judge.

(Sec. 2254 Petition at 5.)  At the commencement of sentencing the court stated:

> We are proceeding in the sentencing in the matter of State of Maine versus Christopher Lyons.  I have received a substantial amount of materials, including some materials today from the Defense in regard to his status in regards to substance abuse treatment.  I saw some of the information for the first time yesterday and I know that the Defense has just recently seen some of this information and the District Attorney's Office just came into possession of some of the information.  Because of that and the desire to go ahead and have that information documented, I'm going to request that the two people who have provided statements, who were passengers in the Lyons vehicle, come forward, be sworn, be put under oath and go ahead and present that information so that we can all hear it here in the courtroom today.

(Sentencing Tr. at 3.)  Defense counsel objected on the grounds that the defense had just come into possession of the information that was about to be presented to the court on the grounds of the late provision of discovery.  (Id. at 4.)  The District Attorney responded that the State had provided the information as part of its sentencing memorandum which was mailed to defense counsel on the preceding Wednesday.  (August 15, 2002, was a Thursday.)   The court responded:

---

[5]   In the post-conviction order the judge described this challenge to the reliance on this witness's testimony with some care. (Nov. 1, 2007, Order at 1-3, State App. B.) It implicitly addressed it in the context of its determination on the propriety of the manslaughter sentence.

7

> All right, I didn't actually see the material until this week. I was in Northern Maine last week. Some of the information, I believe, came about because at the time that I took the plea in this matter I had some questions concerning why this defendant was operating and what was the status of the relationship with the other passengers in that vehicle and why weren't they operating. I suspect that the desire to provide that information at sentencing is how this material came about.
> We will hear what he has to say here today and what the other young man says and then, if there is anything that you want to put on the record, we will go ahead and deal with that at this time. I think this is a natural progression as a result of the question I asked at the time that I took the plea in this matter.

(Id. at 5.) Adam Sims and Christopher Caron were called in turn and they were both cross-examined by defense counsel. Lyons does not articulate how having more than a week to prepare for this testimony would have changed the defense's approach to this testimony. With regards to Lyons's concern that the court impermissibly relied on this testimony in its analysis of the aggravating circumstances leading to Lyons's twenty-five-year manslaughter sentence, this issue is fully addressed below.

In addressing Lyons's second 28 U.S.C. § 2254 claim, the key question for this court is whether or not the Superior Court's conclusion with respect to the basis for the trial court's sentence survives 28 U.S.C. § 2254(d)(2) and (e)(1) scrutiny. Because Lyons believes that the sentencing court intermingled "non-admitted" factual findings relevant to the OUI conviction with his driving and criminal record history in arriving at the manslaughter sentence, I set the trial court's reasoning out at some length:

> Turning now to what is the appropriate sentence in this case, the Court is required to do a three-prong analysis after I deal with the issue of consecutive sentence which I don't believe is appropriate.
> Certainly, the OUI is a maximum sentence. The habitual offender is a maximum sentence as conceded by the defense. I view the aggravated assault in this case here, it is not Mr. Lyons – he shouldn't receive credit for the fact that Mr. Norris didn't get seriously injured in the crash, it's just one of the miracles that he didn't. And so I view the 10-year sentence under the fact situation here leading up to this, and I'll take about that later, is warranted in that case.

8

The reckless conduct in regards to Jennifer Carter, Robert Gilbert, Chris Caron and Adam Sims with that pick-up truck," that to my view is a maximum sentence also.

And so I think all of those maximums, they have to – under the sentence I'm going to impose they have to be served concurrently with the manslaughter case.

Looking at the three-step so-called Hewey analysis, we have to take a look at the basic sentence and the facts leading up to that. I have done a lot of motor vehicle manslaughter cases. Some of them it's acknowledged, you know, that people are best friends or both of them are equally drunk. One was driving 15 minutes before and then they switched drivers and the other one is driving. The courts view those cases differently than they do an entirely innocent man, like [Lyons's victim]. Under the circumstances we have to take a look at the roadway and the time of day, the number of people on the roadway, the operation of the defendant, which was horrendous, bullying people, pushing them out of the way with the truck, scaring people to death, terrorizing for miles, I think Ms. Cummings said, which is probably as good a statement as I could make of what he was doing. And as Mr. Gilbert said, his going to kill someone and he did; you know, entirely foreseeable for what he was doing.

He has a high blood alcohol test, two and a half times the legal limit. And I accept as factual that two other people had tried to encourage him to let somebody who was sober drive and he exerted his power as the boss, as the head guy, to say: No, I'm driving.

Also, the circumstances of the accident and his immediate steps after the accident, which I believe are a part of the whole basic understanding of the acceptance of responsibility and what he did of trying to pay somebody off to accept responsibility and trying to shift the blame when he realized that his horrendous driving had killed somebody, I believe that that takes that to the upper level of the OUI.

I also want to say something about the manslaughter. Manslaughter, when I first was a judge, was a 20-year sentence. The legislature recognized that didn't adequately deal with all cases and they moved it in the early '90s up to a 40-year sentence. There is some recognition here that the legislature also changed the good time laws so that, instead of serving 58 percent of your time when you go to jail, now you serve – 85 percent of your time actually gets served in jail. They changed that but they directed the court at that time to take appropriate steps to make adjustments so that we wouldn't increase the amount of time that people did in jail. Arguably, if somebody got a two-year sentence for a first offense burglary then the next sentence that you would have after the new law, you would give them 18 months rather than the two years to try to make that proportion. Well, the legislature has given use conflicting messages in the so-called changes in the good time law. … [W]e …have to take a look at the two messages: One, you increase the possible sentence for a manslaughter up to 40 years, and the change in the good time law[.] …

9

So I view it that this is in the upper range of the lower tier as a basic sentence and the sentence that I see that as being, and taking into account the factors that I have enumerated, is 18 years.

The next question is, do we get beyond the – do we – then going to the aggravating and mitigating circumstance in phase in the <u>Hewey</u> analysis, how do we view this? Here Mr. Lyons'[s] motor vehicle record is very disturbing. He has suspension after suspension. His record starts with an accident in Richmond, then an .02, a violation in '88. It goes up through with the OUIs, a driving to endanger, which alcohol was a factor in, and numerous suspensions. It is true, he doesn't show an operating as habitual offender, which is unusual with the number of suspensions he has had, but, when you take a look at a driving record such as this, it shows an utter disregard for other people and they way somebody is going to operate on the highway, and that is certainly a factor here.

Unusual in this case from most of the people we deal with are his convictions in '89 – and there are many, many other charges where he was charged and the charges were dropped or plea-bargained or victims failed to appear , and so I am not considering those at all. He has a disorderly conduct in '89, an assault in '93, an unlawful trafficking in 1994, an assault, a violation of protection from abuse, a terrorizing in '98 and a criminal trespass in '01. That is really unusual circumstance. How, it is true, he never did any significant time in jail on those and apparently he did probation and did it successfully because there is no violation of probation in there so that means, when supervised he apparently can follow the rules enough. But that list of crimes and the nature of the crimes, when you combine that with his motor vehicle record, is a significant criminal record of both a motor vehicle nature and otherwise, and it shows antisocial behavior and really problems with conforming with society and society's rules, and I believe that that is very much an aggravating circumstance that would justify taking this to the upper tier in regard to the manslaughter, in other words it takes it over 20 years.

The mitigating circumstance is that he accepted responsibility within a few days. He clearly indicated that he wanted to plead guilty. After I was assigned the case, when I brought the attorneys together, trying to get a handle on this case, it was mentioned by his attorney that he wanted to accept responsibility, he didn't want a trial, he wanted to plead guilty. Well, as pointed out, you know, there would be a lot of evidence in a trial, it would be very difficult to convince 12 people that he wasn't guilty of all of these crimes and I think the State would have been easily able to meet its burden if there was a trial and all of the admissible evidence was to come in.

And balancing off his acceptance [of] responsibility, as far as I'm concerned and going back to the factor it is what he did at the scene and shortly thereafter in regard to blaming others and trying to get others to accept responsibility, in fact, you know arguably blaming [the victim] for being there. And so I think that that minimizes to a certain extent the acceptance of responsibility.

10

> In any event I view that the aggravating circumstances clearly outweigh the mitigating circumstances and the criminal record is in fact a reason to take this to the second tier and it goes into the second tier above 20 years, and the sentence that I impose in this case, it is 25 years to the Department of Corrections.

(Sentencing Tr. at 138-43.)

The 28 U.S.C. § 2254(d)(2) and (e)(1) presumption of correctness to this factual determination is afforded the post-conviction court's conclusions about what factors the sentencing court relied on in reaching its manslaughter sentence.  See Norton, 351 F.3d at 6.  In this case the same Superior Court Justice presided over Lyons's sentencing procedure and his petition for post-conviction review so what we have reflected in the post-conviction review decision is a first-hand interpretation of the reason for the manslaughter sentence, see cf. United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993), and the Superior Court unequivocally indicates that Lyons's criminal record was the reason for his sentence being elevated above twenty years. There is no constitutional infirmity here.  See Almendarez-Torres v. United States, 523 U.S. 224 (1998); see also Cunningham v. California, __ U.S.__, 127 S. Ct. 856, 360, 864 (2007); Blakely, 542 U.S. at 301; Apprendi 530 U.S. at 490.[6]

---

[6] As noted earlier, the relief that Lyons seeks is a remand and resentencing.  There is little doubt given the admitted facts surrounding Lyons's crime that he would not have elected to go to trial and have a jury hear all the evidence relevant to the State's argument about "the nature and seriousness of the crime alone."  It is also apparent from the order of the sentencing judge on Lyons's post-conviction petition that if this court were to grant Lyons's request with a directive that he be resentenced with consideration of only his criminal history he would fair no better with respect to his sentence.

*Conclusion*

For the reasons above I recommend that the Court summarily deny this 28 U.S.C. § 2254 petition. I further recommend that a certificate of appealability should not issue in the event Lyons files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed without ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

October 17, 2008

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge